IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
JONICKA PALMER,                )
                               )
     Plaintiff,                )
                               )   CIVIL ACTION NO.
     v.                        )      2:21cv49-MHT
                               )         (WO)
ELMORE COUNTY BOARD OF         )
EDUCATION and TEMEYRA          )
McELRATH,                      )
                               )
     Defendants.               )
```

**OPINION**

Plaintiff Jonicka Palmer brings this lawsuit against defendants Elmore County Board of Education and Temeyra McElrath, the director of special education for the district.* She alleges that the board and McElrath retaliated against her because of her continued advocacy on behalf of her disabled child. She rests her claim against the school board on § 504 of the

---

*According to the complaint, the Elmore County Board of Education is the "Alabama governmental entity that bears exclusive responsibility for the operation, management, and control of the Elmore County school system/district." Complaint (Doc. 1) at ¶ 2.

Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.  She rests her claim against McElrath on the First Amendment, as enforced through 42 U.S.C. § 1983.  The court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 1343(a)(3-4) (deprivations of civil rights).

This lawsuit is now before the court on the school board and McElrath's motion for summary judgment.  Oral argument was held on the motion at the pretrial conference on January 19, 2023.  For the following reasons, the motion will be granted.

### I. Summary-Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party can do this by demonstrating that the nonmoving party has failed to make a showing "sufficient to establish the existence of an element essential to the [nonmovant's] case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 4744 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving part." *Id*.

## II. Factual and Procedural Background

For many years, Palmer has engaged in advocacy on behalf of her son, A.W., who has severe disabilities. In 2017, she filed a due process complaint with the Elmore County Board of Education, alleging that he was

being wrongfully physically excluded by the school district.  In April 2018, the parties reached a settlement requiring the school district to permit A.W. to attend school for the length of the full school day, among other stipulations.  *See* Settlement Agreement (Doc. 36-7) at 5 (under seal).  That settlement was reduced to an enforceable judgment.  *See id*. at 4.

Shortly after the 2018-2019 school year began, the Elmore County School District once again denied A.W. the ability to attend school for the duration of a full school day.  In January 2019, Palmer filed a new due-process complaint, arguing that the school district was violating the terms of the April 2018 settlement. After a four-day trial, an administrative hearing officer ruled in her favor, finding that the school district's actions "clearly did not comply" with the parties' agreement.  *See* Hearing Decision (Doc. 36-8) at 22 (under seal). The hearing officer entered an additional order requiring the district to abide by the terms of the settlement, including allowing A.W. to

4

attend school in person. *See id.* at 24.

The events of the instant case began during the period of time in which school district administrators were restricting A.W. from attending school, over Palmer's repeated objections. In January 2019, she received two letters from Millbrook Middle School, alerting her that her son "had accumulated five truancies (unexcused absences)." First Letter (Doc. 36-2); *see also* Second Letter (Doc. 36-3) (stating same). The letters warned that her failure to attend a mandatory conference with the district attendance supervisor could "result in the filing of a complaint against the parent." First Letter (Doc. 36-2).

On January 23, 2019, Palmer arrived at the middle school for the mandatory conference with Andre Jackson, the director of administrative services for the district. She was accompanied by an employee from her lawyer's office. Jackson, who believed the employee was Palmer's attorney, called McElrath, the special education coordinator, to see how he should proceed.

McElrath is not Jackson's supervisor, but Jackson was aware that A.W. had an individualized education plan in place, which is why he sought McElrath's consultation.

According to a transcript of the meeting provided to the defendants by Palmer's counsel, Jackson told McElrath that he was meeting with "the parent of [A.W.]" and her attorney. Defs.' Brief in Favor of Summary Judgment (Doc. 37) at 19-20. He asked her if he should conduct the conference with an attorney present. The transcript does not indicate McElrath's response, but it prompted Jackson to reply "very good, that's what I thought." *Id*. Jackson ended the meeting, adding that Palmer might hear from the district again once the district's representatives also had an attorney present. *Id*.

According to testimony Jackson provided on a separate occasion, when he informed McElrath that A.W. had been flagged for excessive absences, she instructed him to "follow procedure." Complaint (Doc. 1) at 18. She did not provide him with any additional context

6

about A.W. or the April 2018 settlement.

In a sworn affidavit, McElrath recounts that she "simply advised [Jackson] that he had a right to have counsel present" during their phone call. McElrath Aff. (Doc 36-5) at 6. She did not otherwise "direct or instruct Mr. Jackson on what to do or not do," and "did not have any context" about why he was meeting with Palmer. *Id*.

Three weeks after the interrupted meeting with Jackson, Palmer received a third truancy-related letter, this time from the Elmore County district attorney's office. The letter said that, as a result of A.W.'s truancy issues, she would be required to "participate in a process of family evaluation and interventions." Third Letter (Doc. 36-4). Her attorney called the D.A.'s office to explain the situation, after which the matter was dropped. Neither the school district nor the district attorney's office pursued the truancy matter further.

7

### *III. Legal Analysis*

At oral argument on the summary-judgment motion on January 19, 2023, Palmer's attorney agreed that the alleged retaliatory conduct at issue was McElrath's failure to inform Jackson of the broader context surrounding A.W.'s absences during their phone call, or at any point thereafter. The attorney argued that, when McElrath became aware that A.W. had been placed in truancy proceedings, she should have taken proactive steps to explain the terms of the April 2018 settlement to attendance officials. The attorney conceded that there was no additional evidence to support allegations that McElrath retaliated against Palmer in any capacity.

To state a prima-facie case of retaliation under the ADA or § 504 of the Rehabilitation Act, or for retaliation under § 1983 First Amendment claim, a plaintiff must prove the following elements: first, that she engaged in statutorily or constitutionally protected expression; second, that she suffered an

adverse action; and third, that "the adverse action was causally related to her protected expression." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (stating necessary elements for a prima-facie case of retaliation under the ADA); *see also Burgos-Stefanelli v. Sec'y, U.S. Dept. of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011) (stating elements for § 504 claims) and *DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1289 (11th Cir. 2019) (stating elements for § 1983 First Amendment claims). "The failure to satisfy any of these elements is fatal to a complaint of retaliation." *Higdon*, 393 F.3d at 1219.

For purposes of summary judgment, and viewing the evidence in the light most favorable to Palmer, the court will accept her assertion that *merely* receiving the three truancy-related letters constituted an adverse action. However, she fails to offer any evidence of a causal relationship between her advocacy and the letters.

McElrath, the special-education coordinator, was

9

fully aware of Palmer's ongoing advocacy efforts. But Palmer fails to show that McElrath had anything more than limited awareness of the "adverse action," and does not present any evidence of a causal relationship between the two. McElrath did not initiate the truancy proceedings, and her office is not responsible for general matters of attendance tracking. None of the letters that Palmer received mention McElrath's name or her office. Palmer does not offer any evidence that McElrath even knew the first and second letters would be sent.

Moreover, Palmer offers no evidence that any of the district employees who *were* involved in sending the truancy letters had any knowledge of her advocacy, or the settlement she had negotiated.

Because Palmer fails to establish a causal relation between her advocacy and the truancy letters she received, she has not made a showing sufficient to establish an element essential to her claims. For this reason, this court finds that summary judgment in favor

of McElrath is appropriate.

At the oral argument on January 19, 2023, Palmer's attorneys also conceded that the school board's liability depended exclusively on McElrath's conduct. For this reason, the court also grants summary judgment in favor of the school board.

Accordingly, the school board and McElrath's motion for summary judgment will be granted in full.

An appropriate judgment will be entered.

DONE, this the 1st day of February, 2023.

                                         /s/ Myron H. Thompson
                                     **UNITED STATES DISTRICT JUDGE**